# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| KARLETA BROWN, | : | Case No. 3:16-cv-00160 |
| Plaintiff, | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| NANCY A. BERRYHILL, Commissioner of the Social Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

A person's eligibility to receive Disability Insurance Benefits or Supplemental Security Income often breaks down when the Social Security Administration finds he or she is not under a "disability." *See* 42 U.S.C. §§ 423(a), (d), 1382c(a); *see Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Plaintiff Karleta Brown's applications met this fate mainly due to Administrative Law Judge (ALJ) Elizabeth A. Motta's non-disability decision. Plaintiff brings the present case seeking judicial review of the ALJ's decision.

The case is presently before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #12), and the administrative record (Doc. #7).

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

On September 19, 2012, the date Plaintiff filed her applications, she was 44 years old. She has at least a high-school education. Before she applied for benefits, she worked as a production assembler.

During a hearing held by ALJ Motta, Plaintiff testified that she could not work mostly due to panic attacks and depression. She has difficulty socializing with others and feels "almost an intimidation being around other people." (Doc. #7, *PageID* #101). She explained that these problems started in her last job at Indianapolis Casting Corporation, a company that makes engine blocks. She stopped working there when the stress became too much, her panic attacks worsened, and her depression started. After that job, her panic attack "progressed" and she cannot stay focused. *Id*. She takes mediations, Xanax and Prosac, prescribed by her physician Dr. Nickras.

Plaintiff experiences frequent crying spells that last all day. She does not leave her house very often and has stayed there for two weeks without leaving. She described her isolation as follows:

> I don't have a life. I don't have anything to talk to anybody about and as far as wanting to talk to somebody about my problems, you know, they don't want to hear that you know, they—it kind of—it brings me where I feel like I'm just a second class of citizen is how I feel sometimes.

(Doc. #7, *PageID* #108). She described her house as her safe haven. *Id*. at 110. She sometimes talks with her mother, but she spends most of her time in her bedroom. *Id*. at 104. When she has a good day, she talks more with her mother. On bad days, she shuts down. *Id*. at 113. She estimated that three quarters of her days are bad.

At some point she suffered an injury to her left hand, causing her chronic pain. *Id*. at 106, 110. Although not discussed in detail during her testimony, in 2004, Plaintiff suffered amputation of two fingertips (left hand) in a work-related accident. *Id*. at 422.

The administrative record contains the opinions provided by Plaintiff's long-term treating physician Dr. Nickras, who began treating her in 2006. In June 2014, Dr. Nickras answered interrogatories identifying Plaintiff's diagnoses as (1) chronic neuritic pain in her left upper extremity; (2) anxiety/panic disorder; (3) depression, and (4) chronic analgesic use for chronic pain. (Doc. #7, *PageID* #568). Dr. Nickras opined that Plaintiff's "main problem is emotional and anxiety/panic disorders would not allow her to work in a normal work environment." *Id*. at 873. Dr. Nickras noted that she did not know if Plaintiff could perform sedentary or light work, and she anticipated that Plaintiff would be absent from work an average of three times per month. *Id*. at 874.

In May 2013, psychologist Dr. Griffiths interviewed and evaluated Plaintiff's mental work abilities at the request of the state agency. He diagnosed Plaintiff with major depressive disorder, recurrent, moderate; panic disorder with agoraphobia; posttraumatic stress disorder; and cocaine abuse in full remission. He explained that there is ample evidence to support diagnoses of major depressive disorder, recurrent and panic disorder with agoraphobia. *Id*. at 427. Dr. Griffith observed that Plaintiff was dysphoric. She displayed a downcast facial expression and looked sad and tired. She spoke slowly. She cried throughout the examination…." *Id*. at 425. She told Dr. Griffiths that she did not trust anybody and felt like people were out to get her. *Id*. at 424. She also reported that she worries, and Dr. Griffiths explained, "[s]he described symptoms associated with

3

panic attacks including accelerated heartbeat and trembling and an overwhelming sense of fear. She estimated that she experiences one episode a week. Finally, Ms. Brown reported symptoms associated with Posttraumatic Stress Disorder including intrusive thoughts, flashbacks, nightmares, hypervigilance, avoidance and difficulty trusting others…." *Id*.

Dr. Griffith opined that Plaintiff's emotional difficulties might interfere with her ability to manage more complex multi-step instructions; her emotional difficulties may interfere with her ability to pay attention and concentrate, especially over extended periods of time; "[i]n addition, the limited energy, easy fatigability, poor frustration tolerance and psychomotor retardation that often accompany depression may interfere with task persistence and pace, as well." *Id*. at 427. And, among other mental-work limitations, Dr. Griffiths thought, "the stress and pressures associated with day-to-day work activity might increase depressive symptomatology leading to crying, withdrawal and slow work performance." *Id*. at 428.

Previously, in November 2012, psychologist Dr. Boerger evaluated Plaintiff for the state agency. His diagnoses included panic disorder with agoraphobia, posttraumatic stress disorder, and major depressive disorder, recurrent, moderate. His not optimistic prognosis explained, "Because of the longstanding nature of Ms. Brown's emotional difficulties, symptoms are likely to continue for the indefinite future." *Id*. at 395. He thought Plaintiff's memory skills may vary, depending on her pain level; she has a pattern of social avoidance, spends most of her time at home, and does not care to interact

with others.  *Id*. at 396.  He lastly opined that Plaintiff's "anxiety and depression are likely to limit her ability to tolerate work pressures in a work setting."  *Id*.

In December 2012, psychologist Dr. Umana reviewed the record and credited a previous assessment by an ALJ under the *Drummond* rule.  *Id*. at 170 (referring to *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997)).  Dr. Hoffman wrote that Plaintiff can perform simple, routine work that has minimal changes and is non-confrontational; she can work around the general public but cannot directly deal with the public; she can occasionally interact with supervisors and co-workers."  (Doc. #7, *PageID* #170).  In June 2013, psychologist Dr. Hoffman reviewed the record and provided opinions identical to Dr. Umana's.  *Id*. at 152.

Turning to the Social Security Act, it defines a "disability" as physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See* 42 U.S.C. §§ 423(a), (d), 1382c(a); *see also Bowen*, 476 U.S. at 469-70.  ALJ Motta concluded that Plaintiff's medically determinable impairments fell outside this definition by conducting the 5-step evaluation required by social security law.  *See* 20 C.F.R. § 404.1520(a)(4).  Her more significant findings began with her conclusion that Plaintiff had many severe impairments—status post-traumatic injury to her left hand with partial amputation of the fingertips of her middle and ring fingers; reflux sympathetic disorder of her left hand, left arm neuropathy, depression/dysthymic disorder, and anxiety—but her impairments did not automatically constitute a disability.  (Doc. #7, *PageID* #73).

5

The ALJ next assessed Plaintiff's residual functional capacity or the most she could do despite her impairments. *See* 20 C.F.R. § 404.1545(a); *see also Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). Doing so, the ALJ found that despite Plaintiff's impairments, she could still perform a limited range of light work involving, in part, "simple work; low stress work with no strict production quotas or fast pace and only routine work with minimal changes and is non-confrontational; no contact with the public as part of job duties; and only occasional contact with coworkers and supervisors." (Doc. #7, *PageID* #75). Plaintiff's physical and mental limitations precluded her from performing her past relevant work. *Id*. at 86.

The ALJ next found that given Plaintiff's residual functional capacity plus her high-school education (at least), work experience, and age, she could still perform a significant number of jobs available to her in the national economy. The availability of such jobs—"photo machine operator," "mail clerk," and "surveillance system monitor"—meant that Plaintiff was not under a benefits-qualifying disability. *Id*. at 86-88.

The present judicial review determines whether ALJ Motta applied the correct legal standards and whether substantial evidence supports her findings. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). If she failed to apply the correct legal criteria, her decision may be fatally flawed even if the record contains substantial evidence supporting her findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004). A conclusion is supported by substantial evidence when "a

'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance ...." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Plaintiff contends that the ALJ erred when assessing and placing no meaningful weight on Dr. Nickras' opinions concerning her mental-work abilities. The Commissioner asserts that the ALJ properly discounted Dr. Nickras' opinions by recognizing that her opinions contained diagnoses rather than objective or clinical findings.

A treating physician or psychologist's opinion is entitled to controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and ... is not inconsistent with other substantial evidence in [a claimant's] case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2017) (citation and internal quotation marks omitted); *see Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014). If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544). This same list of considerations applies when ALJs weigh the opinions of one-time examiners or record-reviewing physicians and psychologists. *See* 20 C.F.R. § 404.1527(e)(2)(ii).

ALJs are also "required to provide 'good reasons' for discounting the weight given to a treating-source opinion."  *Gayheart*, 710 F.3d at 376 (citing § 404.1527(c)(2).

ALJ Motta declined to place controlling or deferential weight, and instead placed "little weight," on Dr. Nickras' opinions concerning Plaintiff's mental-work limitations. (Doc. #7, *PageID* #84).  The ALJ wrote, "Although Dr. Nickras as a primary source has seen the claimant since 1996, the undersigned gives little weight to her assessment because it is unsupported by objective signs and findings in the preponderance of the record."  *Id*.  Yet, the ALJ did not buttress this with further information or explanation, leaving it fatally ambiguous.  The Sixth Circuit has explained:

> [T]he conclusion that [the treating source's] opinions "are not well-supported by any objective findings" is ambiguous.  One cannot determine whether the purported problem is that the opinions rely on findings that are not objective (i.e., that are not the result of medically acceptable clinical and laboratory diagnostic techniques, *see* 20 C.F.R. § 404.1527(c)(2)), or that the findings are sufficiently objective but do not support the content of the opinions."

*Gayheart*, 710 F.3d at 377.  Additionally, ALJ Motta did not explain what, if any, specific portions of the mental health records are inconsistent with Dr. Nickras' conclusions.  This shortcoming, combined with the ALJ's failure to discuss in what way the Dr. Nickras' opinions are "unsupported," did not provide good reasons for declining to place controlling weight on Dr. Nickras' opinions.  Other evidence, moreover, compounds this problem—specifically, the opinions of Dr. Boerger and Dr. Griffiths, which were largely consistent with the significant symptoms and mental status abnormalities recorded by both Dr. Nickras (and, for that matter, Plaintiff's mental health counselor, Ms. Allen).  *See* Doc. #7, *PageID* #s 391-96, 401, 408, 410, 417, 421-28, 496-

8

504, & 562.  At a minimum, this evidence is not inconsistent with Dr. Nickras' opinions. *Cf.* Social Sec. Ruling 96-2p, 1996 WL 374188, *3 (July 2, 1996) ("Not inconsistent. This is a term used to indicated that a well-supported treating source medical opinion need not be supported directly by all of the other evidence (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts of conflicts with the opinion.").

The ALJ also observed, "In the June 2014 assessment, Dr. Nickras basically refused to address any physical limitations, which is surprising given how much pain medicine she has been prescribing over the years." (Doc. #7, *PageID* #84).  This observation is not a valid reason for discounting Dr. Nickras' opinions because it misreads what Dr. Nickras wrote.  Dr. Nickras did not say that her training deprived her of the ability to address "any physical limitations…," as the ALJ believed. Instead, Dr. Nickras wrote, "I do not have the equipment or training to assess physical endurance as questioned above." (Doc. #7, *PageID* #574).  Her reference to the physical abilities "questioned above" pointed to the specific lifting and other limitations encompassed within the definitions of sedentary and light work.  *Id.*  The ALJ unreasonably overlooked the fact that the equipment Dr. Nickras lacked—doubtlessly referring to weight-lifting equipment used to test patients' lifting abilities—is not often found in primary care physicians' offices.  The ALJ also unreasonably overlooked the training necessary for anyone, including a physician, to be qualified to safely test a patient's lifting, walking, and standing abilities.  And, Plaintiff correctly points out that Dr. Nickras' acknowledgment that she lacks the equipment and training in this area constitutes honest

9

self-evaluation. Such honesty tends to show she was not exaggerating her observations or opinions and therefore tends to support the support the validity of the information and opinions she provided.[2]

The ALJ next rejected Dr. Nickras' opinions about Plaintiff mental-work limitations based on the specialization factor. *See* 20 C.F.R. § 404.1527(c)(5). This appears in the ALJ's recognition that Dr. Nickras "is not a mental health professional and is unqualified to offer an opinion on the claimant's mental functioning." (Doc. #7, *PageID* #84). Although Dr. Nickras is not a psychiatrist or psychologist, she treated Plaintiff for anxiety/panic disorder and depression. She also had the benefit of observing Plaintiff during her many office visits over many years. There is no indication in the record that Dr. Nickras was unqualified to treat Plaintiff's mental health problems by prescribing medication and adjusting it over time. Substantial evidence, therefore, does not support the ALJ's use of the specialization factor to find Dr. Nickras unqualified to an offer an opinion about Plaintiff's mental functioning. *See Kester v. Astrue*, 2009 WL 275438, at *7 (S.D. Ohio 2009) (While the family doctor "did not specialize in mental health treatment, his training and licensing as a family physician still made him qualified to treat and prescribe such medications for Plaintiff.").

The ALJ's deferential weight analysis of Dr. Nikras' opinion is also deficient in

---

[2] The ALJ elsewhere observed that Dr. Nickras' "avoidance of assessing the only area (physical) for which she would have some reasonable qualification certainly does not bolster the undersigned's confidence in her opinion." (Doc. #7, *PageID* #84). This is not a reasonable reading of Dr. Nickras' decision to not provide an opinion about the particular questions she was asked.

10

that she fails to meaningfully consider and explain how any of the regulatory factors beyond specialization factored into her assessment of Dr. Nickras' opinions. Focusing on one factor to the exclusion of others does not provide good reasons for placing little weight on Dr. Nickras' opinions particularly when the ALJ misread some of Dr. Nickras' statements and when other factors favored placing more weight on this treating physician's opinions. Those other factors included the length and extent of Dr. Nickras' treatment relationship with Plaintiff, the meaningful explanations Dr. Nickras' provided in support of her opinions, and the consistency of her opinions with other evidence—such as the assessments of Drs. Boerger and Griffiths. *See Gentry,* 741 F.3d at 723, 727 (when treating physician rule does not apply, "ALJs may not reject the opinion, but must apply other factors to determine the weight to give the opinion ….").

Further, ALJ Motta placed significant weight on the cursory opinions of record-reviewing psychologists, Dr. Umana and Dr. Hoffman, by finding their assessments supported by objective signs and findings and that "the current record contains nothing new to support marked or greater limitations that those set forth in the prior [ALJ's] decision, and thus there is not material change from the prior decision." (Doc. #7, *PageID* # 82). This constituted error because the ALJ did not apply the same level of scrutiny to these record-reviewers' opinions than she applied when rejecting Dr. Nickras' opinions. "A more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulation requires." *Gayheart*, 710 F.3d at 379.

11

In support of ALJ Motta's decision, the Commissioner maintains that "specific inconsistencies and aspects of the record conflicted with Dr. Nickras' mental health limitations." (Doc. #11, *PageID* #650). Yet, in weighing Dr. Nickras' opinions, ALJ Motta did not specifically rely on the "inconsistencies and aspects of the record" the Commissioner now identifies. The Commissioner instead looks elsewhere in the record, such as ALJ Motta's evidentiary summaries and discussions of Plaintiff's credibility. To this extent, the Commissioner improperly relies on *post hoc* rationalizations to substitute for the ALJ's deficient weighing of Dr. Nickras' opinions. "In reviewing an ALJ's findings and conclusions, this Court shall not 'accept appellate counsel's *post hoc* rationalization for agency action in lieu of [accurate] reasons and findings enunciated by the Board.'" *Keeton v. Commissioner of Social Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014) (quoting, in part, *Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991)). In the Sixth Circuit, this principle is tempered by the possibility of harmless error for the reasons set forth in *Miller v. Berryhill*, No. 3:16cv00094, 2017 WL 1021313, at *8 (S.D. Ohio 2017). This, however, does not help the Commissioner because the inconstancies and aspects of the record relied on do not show the ALJ's errors were harmless. Indeed, Dr. Nickras supported her opinions with explanations and were not so patently deficient that an ALJ on remand could not possibly credit them. *See Wilson*, 378 F.3d at 547 (noting parenthetically, "Where 'remand would be an idle and useless formality,' the courts are not required to 'convert judicial review of agency action into a ping-pong game.'" (citation omitted)).

The Commissioner also contends that the ALJ correctly followed the mandate required by *Drummond*, 126 F.3d 837, and properly found that Plaintiff failed to demonstrate that the record contains any credible change in her impairments since the previous ALJ's decision. This contention lacks merit due to the ALJ's errors in weighing the opinions provided by Plaintiff's long-term treating physician Dr. Nickras, by consulting one-time examiners Drs. Griffiths and Boerger, and the state agency record-reviewers Dr. Umana and Hoffman. Certainly if the dispositive weight is properly placed on the opinions of Drs. Nickras, Griffiths, and Boerger, then the record would contain the type of new and material evidence required by *Drummond*.

The Commissioner argues that the new evidence in the record was consistent with the prior ALJ's findings and inconsistent with the conclusion that Plaintiff had extensive mental-work limitations. The Commissioner highlights that recent notes from Plaintiff's therapist reflect multiple mental-status abnormalities that were "similar to notes from the previous period." (Doc. #11, *PageID* #641) (citations omitted). Yet, the previous ALJ described the therapy notes available for her review at that earlier time as containing no mental-status examinations, and the previous ALJ based her assessment of Plaintiff's mental-work abilities, at least in part, upon the lack of this evidence. (Doc. #7, *PageID* #134). This illustrates that even the "notes from the previous period"—which ALJ Motta reviewed—let alone the subsequently produced and more recent records, constituted new evidence that the previous ALJ did not have the opportunity to consider. Additionally, the mental-status anomalies appearing in these more recent records were material to

Plaintiff's mental-work limitations and undercut ALJ Motta's conclusion that the opinions of Drs. Nickras, Boerger, and Griffiths were all without any objective support.

In light of the above, Plaintiff's requested remedy comes into focus. She seeks either a judicial award of benefits or an order remanding this matter for further administrative proceedings.

Under sentence four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted "only where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking." *Felisky*, 35 F.3d at 1041 (quoting *Faucher v. Sec'y of Health & Humans Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)).

A remand for an award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176. Yet, Plaintiff is entitled to an Order remanding this matter to the Social Security Administration pursuant to sentence four of § 405(g) due to problems set forth above. On remand the ALJ should be directed to review the evidence of record and determine anew whether Plaintiff was under a benefits-qualifying disability pursuant to the applicable five-step sequential evaluation procedure. The ALJ should be specifically instructed that his or her five-step

evaluation must, without limitation, re-assess the opinions provided by Drs. Nickras, Griffiths, Boerger, Umana, and Hoffman; and re-assess Plaintiff's residual functional capacity, including combination her mental and physical impairments have on her work abilities and limitations.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Karleta Brown was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.

June 22, 2017                                                       *s/Sharon L. Ovington*
                                                                                       Sharon L. Ovington
                                                                                       United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).